ROGERS, Plaintiff-Appellant, v. TONI HOME PERMANENT COMPANY, Defendant-Appellee.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23928. Decided January 16, 1957.

Harold E. Frye, for plaintiff-appellant.
Arter, Hadden, Wykoff & Van Duzer, for defendant-appellee.

## OPINION

By SKEEL, J:

This appeal comes to this Court on questions of law from a judgment entered for the defendant by sustaining a demurrer to the second and third causes of action of the plaintiff's second amended petition seeking damages for breach of an alleged express warranty as set out in the second cause of action and of an implied warranty as claimed in the third cause of action. After the demurrer was sustained, the plaintiff not desiring to plead further, the court entered judgment for the defendant on the second and third causes of action. The petition of the plaintiff is based on a claim for damages alleged to have been sus-

tained because of injury to and loss of her hair in the use of a hair-waving product manufactured by the defendant.

The first cause of action of the second amended petition founded on negligence is still pending and is not involved in this appeal. The second cause of action alleges that the Toni Home Permanent Company is a foreign corporation, not licensed to do business in Ohio, is engaged in the manufacture and sale of hair preparations and products throughout the several states, including the State of Ohio, that the plaintiff was induced to purchase a product of defendant's manufacture known as "Toni Home Permanent" as a result of defendant's representations made in advertisements seeking to induce ultimate consumers to purchase and use its products, and particularly, "Toni Home Permanent." It is alleged that said product is a drug as defined by §3715.01 R. C., intended for use in the self-administration of a permanent hair wave. The plaintiff alleges that after first testing her hair, as directed by the defendant in printed instructions furnished by the defendant for the safe use of its product, she proceeded, with the help of her mother and by following explicitly such instructions, to administer to herself a "permanent wave." In doing so, she used exclusively the materials furnished by the defendant, which materials were labeled "Very Gentle," and by reason of the deleterious and harmful character of such materials furnished by the defendant, known as "Toni Home Permanent," when applied to the hair of the plaintiff, caused her hair to "assume a cotton-like texture and became gummy; that her hair refused to dry and that when the curlers furnished by the defendant were attempted to be removed, her hail fell off to within one half inch of her scalp."

It is alleged that the defendant induced the plaintiff, by express representation in advertisements directed to the attention of the public and particularly to ultimate consumers, to purchase its product from distributors or retailers, said representations being to the effect that she could use the "Toni Home Permanent" for the purpose intended and in the manner as directed by the defendant in complete safety to her person. There are other allegations of the second cause of action supplementing and in support of the foregoing allegations of fact. The plaintiff then prays damages for the injuries sustained as a result of applying the "Toni Home Permanent" as directed by the defendant.

The third cause of action adopts all of the facts set forth in the first and second causes of action, and alleges a breach of an implied warranty of its product imposed by law as to its fitness for use and merchantability in the following respects:

"1. That the Plaintiff was a third-party beneficiary, as the intended consumer, of any contracts entered into by the Defendant for the sale of its mechandise to the Plaintiff.

"2. That there was an implied warranty which ran with the article from the Defendant to the consumer, the Plaintiff, that the article was fit for the use for which it was designed, compounded and intended.

"3. That the Defendant, in placing its product upon the market, intended that it eventually be sold to Plaintiff, or other like consumers, and impliedly warranted the products to Plaintiff, or other like consumers.

"4. That Defendant was conscious of the fact that Plaintiff, or others similarly induced by Defendant's advertising, would be the ultimate purchasers and knowing and intending that Plaintiff and other purchasers be those the Defendant looked to for income, the Defendant impliedly contracted with them, and thus, impliedly warranted its product to them.

"5. That an implied warranty by the Defendant to the Plaintiff arose as a matter of public policy, which public policy is evidenced by the Pure Food and Drug Act of the State of Ohio, which Act places manufacturers and sellers of foods and drugs in a category separate and distinct from that of the manufacturers and sellers of articles other than foods and drugs."

The plaintiff then alleges facts constituting a breach of such implied warranty and claims damages as a specific result of such breach.

From the judgment entered for the defendant on her second and third causes of action, the plaintiff's appeal claims the following errors:

"1. The trial court erred as a matter of law in sustaining Defendant-Appellee's demurrer to Plaintiff-Appellant's second cause of action.

"2. The trial court erred as a matter of law in sustaining Defendant-Appellee's demurrer to Plaintiff-Appellant's third cause of action."

It is evident that the sole basis upon which the court sustained the defendant's demurrer to the second and third causes of action of the second amended petition was on the ground that there was no privity between the plaintiff as ultimate consumer and the defendant as manufacturer of the "Toni Home Permanent" used by the plaintiff to her alleged injury, the plaintiff having admittedly purchased defendant's product from an independent retailer.

The facts pleaded in plaintiff's second amended petition as above set forth for the purposes of the defendant's demurrer must be considered as true.

It is a matter of common knowledge that the method of merchandising products manufactured for use and consumption by the individual has completely changed since the formative period of the law of "Sales." From the period when the "common" artisan sold the products of his own manufacture directly to the consumer to the time of expanding markets through the direct efforts of middlemen and retailers, who created the markets and served the consumer's needs, until today when competing manufacturers by direct advertising create, by their own acts, the consumer market for their products and the middleman or retailer has become a delivery station to make such goods available to the demands of the consumer. In the transition, even the packaging is now done by the manufacturer so that the product is usually delivered to the consumer in sealed cans, boxes or wrapping as prepared by the manufacturer. The Super Market exemplifies the process where the customer picks what he wants from the shelves of the Super Market without even the presence of a sales person, having been induced in his selection by the manufacturer's advertisement, and the first time he has any contact with the retailer is in paying for his selections at the cashier's desk.

The facts in this case as pleaded fit completely into the foregoing pattern. The plaintiff demanded of a retailer a "Toni Home Perma-

nent," which was received in a sealed bottle as packaged by the defendant, with which was also received the defendant's printed directions for the "safe" use of its product. The purchase was as alleged by the petition, induced by the defendant's representations.

By the early law in transactions involving the sale of personal property, the obligation imposed upon the seller was only to see to it that the goods agreed upon were made available to the buyer. So far as their condition was concerned (except where actual fraud was practiced), the law placed full responsibility on the buyer to determine that question for himself, unless he requested a representation as to their quality, which, if given, was considered a warranty and as such was collateral to and did not become part of the sales agreement. Caveat Emptor (Let the Buyer Beware) was the basic theory of the law, and, where a warranty was demanded, if the transaction was a sale of identified property, the property in the goods passed irrevocably to the buyer even though the warranty was untrue and the only action afforded the buyer was an action in tort for damages for breach of the collateral promise or representation. If the sale was of unspecified goods, the warranty (collateral in nature or legal effect) was treated as a condition which did not survive the acceptance of the goods. (Paragraphs 195 and 196, Volume 1, Williston on Sales, Revised Edition.)

The action for breach of warranty was in its origin a pure action in tort. The gradual change of the character of the action to one in contract has come about because promises inducing the sales, such as descriptive representations, were included in the terms of the agreement. The form in which the inducement was made did not change the legal meaning of "warranty" nor the character of the obligation thus created or the manner or form of the action in which a breach of warranty could be pursued. A warranty is an obligation imposed by law, either because of a representation which induces the sale or a promise within the terms of the agreement of sale, and a breach of this obligation imposed by law may be pursued either in an action in tort or in contract.

Williston, in paragraph 197, beginning on page 506 of Volume 1 in the Revised Edition on the Law of Sales, after stating that there can be no doubt but that today the obligation of warranty is conceived of as contractual and that "there can be no doubt but that the seller may expressly promise to be answerable for some alleged quality of the articles sold, or that if he makes a promise for good consideration, he enters into a contract." The author then says that:

"This, however, does not either upon authority or reason exhaust the possibilities of express warranties. It should not be the law, and by the weight of modern authority, it is not the law that a seller who by positive affirmation induces a buyer to enter into a bargain can escape from liability by convincing the court that his affirmation was not an offer to contract. A positive representation of fact is enough to render him liable. The distinction between warranty and representation which is important in some branches of the law is not appropriate here. The representation of fact which induces a bargain is a warranty.

"As an actual agreement to contract is not essential, the obligation of the seller in such a case is one imposed by law as distinguished from one voluntarily assumed. It may be called an obligation either on a quasi-contract or a quasi-tort, because remedies appropriate to contract and also to tort have been applicable. That this is the character of the seller's obligation was recognized by Blackstone, and that this point of view has been lost sight of by many courts is no doubt due to the fact that assumpsit became so generally the remedy for the enforcement of a warranty. But even recently an action of tort for warranty has been held by distinguished courts to lie irrespective of any fraud on the part of the seller or knowledge on his part that the representations constituting the warranty were untrue. These authorities should serve to show that the elements of a warranty are broader than those of a contract."

Note 16, under this paragraph, in attempting to clarify what Blackstone has had to say on this subject, provides that:

"Blackstone places his treatment of warranty under the head of contracts which are implied by law: 'Which are such as reason and justice dictate, and which therefore the law presumes that every man has contracted to perform; and, upon this presumption, makes him answerable to such persons, as suffer by his nonperformance.' In the last class of contracts 'implied by reason and construction of law,' Blackstone includes warranties: 'Also, if he that selleth anything doth upon the sale warrant it to be good, the law annexes a tacit contract to this warranty, that if it be not so, he shall make compensation to the buyer; else it is an injury to good faith, for which an action on the case will lie to recover damages.' "

The legal character of an express warranty as an obligation imposed by law is clearly demonstrated as not necessarily contractual when considering the parol evidence rule. The subject is treated in cases where the sale was induced by verbal representations or by the use of samples and where the contract is thereafter reduced to writing and no mention of the representations or samples that induced the sale is made, in the writing.

This subject is considered in paragraph 215, beginning on page 554 of Volume I of the Revised Edition of Williston on Sales. On page 558, the author, in concluding the consideration of this question, says that:

"But if a written contract for goods is procured by representing that the goods described in the writing are like a sample which is exhibited, it seems that parol evidence should be admitted to prove these representations and that the seller should be liable as warranting the truth of them. They are not part of the contract, but the law should impose irrespective of the intention of the parties an obligation upon one who induces a bargain by making such statements."

The law is clear that an intent to warrant is not an essential element in establishing a representation as constituting a warranty. Any representation that has the effect of inducing the sale comes within the statutory definition. A rule of law that would distinguish between the rights of the parties to a sale where the representation that induces the sale is collateral to and not included within the terms of the agree-

ment, written or otherwise, and a case where the same representation is a part of and included within the terms of the sales agreement certainly must lead to utter confusion and is not to be recommended.

In an action between the buyer and seller, the courts of Ohio have held that representations inducing the sale but not contained in a written contract constitute a warranty enforceable against the seller. In the case of Meyer v. Packard Cleveland Motor Co., 106 Oh St 328, 140 N. E. 118, 28 A. L. R. 986, paragraphs 1 and 2 of the syllabus provide that:

"1. Where one is engaged in the manufacture and sale of motor trucks, and the rebuilding of its used trucks, newspaper ads or circulars touching rebuilt trucks, authorized and published by such motor company to the general trade, are competent evidence in behalf of the purchaser of any such truck, who knows of such ad and relies upon the same, unless it appear from the special contract signed by the parties touching such sale that such special contract withdrew or altered the representations made in such general ad.

"2. The language of a written order or contract of sale—'All promises, verbal agreements, or agreements of any kind pertaining to this purchase not specified herein, are hereby expressly waived'—does not exempt such contract from the force and effect of such general advertisement touching the character and quality of a truck in process of rebuilding when such contract was executed."

The fact that a representation inducing a sale of personal property need not be a promise written in the terms of a sale to constitute a warranty is further exemplified by a consideration of statements made previous to the bargain. Williston on Sales, supra, paragraphs 209 and 210, in considering this question, comes to the conclusion that such statements, if relied on to bring about or to consummate a sale of personal property, constitutes an express warranty.

The importance to the buyer of being afforded the right to bring an action for breach of warranty rather than in negligence in the process of manufacture or in the use and selection of materials used in the manufacture of the goods must be kept clearly in mind. If the buyer is compelled to contest the question of negligence in the process of manufacture with the manufacturer, he will be at a great disadvantage unless the circumstances are such as to invoke the doctrine of res ipsa loquitur. In the very nature of things, the evidence of negligence in the use of materials or process of manufacture or inspection is within exclusive control of the manufacturer. In such case, the plaintiff has the burden of showing fault on the part of the manufacturer.

The tort action permitted and in fact the only action for breach of warranty possible under the early common law was not one requiring the plaintiff to establish fault in the process of manufacture or in the use of materials as the basis of recovery. Here the tort was concerned with the truth of the representation regardless of whether or not the seller knew his representation to be untrue or that his product was negligently made. The fact that the seller's representations were false, which resulted in injury to the buyer in that he did not get the goods the seller represented or pretended to sell, was clearly the basis of the

tort action and, damages, both direct and consequential, were recoverable for the breach of the untrue representation. The action was in the nature of one for misrepresentation without the necessity of proving intent to defraud or that the misstatement of fact was knowingly made.

Having concluded that the obligation of "warranty" in the sale of goods is one imposed by law and need not necessarily be based on contract, the remaining question is whether the ultimate purchaser, having been induced to purchase the goods by representations made by the manufacturer, has a cause of action against the manufacturer where the purchase was made from an independent middleman or retailer whose part in the transaction was limited to passing the goods on from the manufacturer to the consumer, the article being selected by the buyer without the middleman or retailer making representations of any kind. It must be admitted that the earlier cases, with a few exceptions based on the character of the goods, held that such a cause of action did not exist because of the absence of privity between the manufacturer and the ultimate consumer. These cases completely overlook the fact that in many of them the obligation created by a warranty is not necessarily contractual in nature but is imposed by law.

The requirement of privity had its beginning and is still founded on court decisions. At the time the rule was established, the possibility of a warranty as a part of the sales agreement came into recognition, that is, that it was not necessarily collateral in legal effect and the common law action in assumpsit was then permitted to replace the tort proceeding in trespass on the case. These early cases gave no indications in fact that the manufacturer or creator of the goods made any representations to induce the ultimate consumer to buy his product. The selling was done by the retailer, and so, even though the doctrine of privity was not an essential element in dealing with a warranty imposed by law, its injection into such cases was in accord with the facts. Williston, in an article dealing with "Liability for Honest Misrepresentation," 24 Harvard Law Review, 415, at page 437, said that:

"If a man makes a statement in regard to a matter upon which his hearers may reasonably suppose he has the means of information, and that he is speaking with full knowledge, and the statement is made as a part of a business transaction, or to induce action from which the speaker expects to gain an advantage, he should be held liable for his misstatement."

The foregoing quotation will be found in and adopted by Professor James H. Spruill, Jr., in his article on "Privity of Contract as a Requisite for Recovery on Warranty," Volume 19, page 551 (1941), North Carolina Law Review. He then proceeds to say, on page 557, that:

" 'What is important is that statements are made by one who professes a reasonable certainty of knowledge, or whose position makes accurate information peculiarly available to him. Not only parties to the contract itself, but those interested in and closely connected with the subject matter who, because of such connection, are in a position to furnish accurate information, or who purport to impart it, may well be held to answer here for even innocent information.' 'There are situa-

tions in which action is commonly taken in business negotiations upon the assumed existence of certain facts. Business proceeds not upon the assumption that representations are merely honestly and cautiously made, but that they are true.' As applied to the problem under consideration, this principle might be stated thus: One in, or apparently in, a position to know, who, actuated by self-interest, makes a representation intended to induce, and reasonably inducing another to purchase or to use goods, is an insurer of the truth of the matter so represented.

"If this analysis be followed and representation be regarded as warranty, then privity of contract will be seen in a different perspective. It now becomes significant only insofar as it evidences a reasonable basis for reliance. And here, in the principle of reliance, one can, perhaps, see the reason for the conventional rule that recovery on warranty may be had only where there is privity of contract. For, while warranty is not contract, it would seem that until recently it was only in situations where contract existed that one would find that reasonable reliance which serves as the basis for liability without fault. This statement is, of course, subject to some exceptions; but the law has a tendency to fit the average and ignore the exceptional situation."

and on page 558, it is said that:

"The Sale of Goods Act and the Uniform Sales Act were drafted as codifications of the common law. For this reason they reflect the production and merchandising pattern of the past century rather than the present. They make no provision for warranty for the benefit of a subvendee; but it would seem clear that neither act was intended to exclude such liability. And where one is seeking to extend liability on warranty for the benefit of a subvendee or donee, his great difficulty is not the Sales Act but the fact that such relief has been so frequently denied as to make the rule as to the necessity of privity seem almost axiomatic. But, despite this obstacle, the law is on the move."

The cases dealing with the requirement of privity in an action for breach of warranty (express or implied) are in hopeless conflict with a growing tendency (for one reason or another) to sidestep or ignore such requirement. The reasons for permitting recovery against the manufacturer by the sub-purchaser, when such action is permitted, is based in some jurisdictions on the character of the product. If the product is food, drugs or is of an inherently dangerous character, recovery is permitted without privity on grounds of public policy while the purchaser of other chattels is not permitted such right. These distinctions are hard to justify. What is in fact dangerous is highly problematical depending on many considerations and surrounding circumstances. In some jurisdictions the character of the injury is the distinguishing feature. Here actions for personal injury are permitted while actions for property damage are denied without privity. It is hard to see why, on the grounds of public policy, a slight personal injury should come within the exceptions when a fire causing the destruction of one's home caused by a defective electric blanket would not. And finally, the character of the action has been held to make the difference. If the action is for breach of warranty, without privity, recovery in some jurisdictions is denied. If it be based on negligence, that is on a showing

of fault, recovery by the ultimate consumer against the manufacturer is now permitted in most jurisdictions. In the case of MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, it was said that the manufacturer, by putting a product on the market, assumes a responsibility to the consumer resting not only in contract but upon the relation arising from his purchase and the possibility of harm if proper care were not used in producing the goods. Before this case, recovery in negligence cases, without privity, was not permitted in many jurisdictions. Now such action is almost universally recognized.

Where recovery is permitted in a tort action, the basis of such action must be considered. Simple negligence is the doing of an unintentional act which violates a legal duty causing injury to another. Willful negligence constitutes the purposeful, unlawful injury of another or the purposeful doing of a dangerous act or one in violation of a duty imposed by law which in all reasonable probability, to the knowledge of the wrongdoer, will result in injury to another. Simple negligence is the direct opposite to an injurious act willfully done where the mind fully appreciates the legal duty violated. Where the mind is innocent of any purpose to injure another or knowledge of the fact that in all probability injury will result from the act purposely done, simple negligence results. This is true under two circumstances. First, when the duty violated is one imposed by law without relation to the breach of a representation in a voluntary transaction created by agreement between the parties, and second, where the breach is of a representation made to induce a sale of goods, said representation being honestly made but which is in fact untrue, to the purchaser's damage.

The latter situation was the basis of the tort action recognized and permitted at common law when a warranty was held to be collateral to the sales agreement and the breach of the collateral representation was required to be separately pursued. The right to an action ex delicto for violation of the representations as to the quality of the goods, whether made collateral to or in fact a part of the contract, has since continued. Such action is not based on fault but rather on the untruthfulness of the representations honestly and innocently made.

Note 9, under paragraph 196, page 504, of Williston on Sales, supra, in quoting from an early case, says that:

". . . In Williamson v. Allison, 2 East, 446, 450, Lord Ellenborough said: 'The warranty is the thing which deceives the buyer who relies on it; and is thereby put off his guard. Then if the warranty be the material averment, it is sufficient to prove that broken to establish the deceit: and the form of the action can not vary the proof in that respect . . . Here then the plaintiff will be equally entitled to recover in tort upon the same proof, by striking out the whole averment of the scienter.' "

The point to be noted is that breach of the representation, which was not necessarily a promise, was an obligation imposed by law and the subject of a tort action by anyone rightfully relying thereon to his damage. To hold that privity is necessary under these circumstances and not necessary where the negligence was in the selection of materials or the process of manufacture seems inconsistent.

The representation made by a manufacturer seeking to induce the use of his product (where because of economic reasons he must sell his product through a distributor or retailer) and where such ultimate consumer relies on his representation as the inducing cause of the purchase, a warranty in favor of the ultimate consumer is made out. Certainly the corner drug store or any other retailer of "Toni Permanent Wave" could have no use for such product or would be induced to buy it because of representations of the advantage to be gained by its use except as the ultimate consumer may in response to the manufacturer's representation make a demand for the product; and, the Toni Home Permanent Company, by inducing through direct advertising the use of its product to the ultimate consumer, does so for its own benefit and is only secondarily interested in the retailer as a place where his product is made available to the public demand which his advertising creates. The breach of the legal duty thus assumed may be without fault but, if untrue, constitutes a tort as originally recognized in the development of the law of warranty and should be redressed in an action for breach of warranty the same as the action permitted in the MacPherson case, supra, where the tort of the manufacturer consisted in a failure to exercise due care, under the circumstances, in the use and inspection of materials.

In the ever increasing number of cases now avoiding or denying that a contractual relationship must be established between the parties (where the sale is induced directly by the manufacturer's representations) to enforce a claim of a breach of an express warranty by the ultimate consumer, a number of legal principles or fictions are employed on which to base the result. They may be enumerated as follows: The warranty runs with the goods, or inures to the consumer's benefit or the buyer is a third party beneficiary. The goods are in sealed containers, or that the retailer or middleman acts as the agent of the manufacturer or by reason of the public offer of the manufacturer to the ultimate consumer, there is by reason of the representation of the quality of the goods and their purchase induced by such representation, a unilateral contract between the manufacturer and the ultimate buyer.

If any one of these theories is adopted, a warranty between the manufacturer or producer and the middleman or retailer must be shown except as to the last two theories suggested. As to the theory of a unilateral contract, in paragraph 2, 4, page 104 of "Products Liability and the Food Consumer" by Reed Dickerson, found in Chapter II, styled "Manufacturers' and Wholesalers' Responsibility to Consumers for Unwholesome Food," the author says that:

"From a policy standpoint, a direct legal connection between manufacturer and consumer is called for here as fully as in the negligence situation dealt with in MacPherson v. Buick Motor Co.

"Liability imposed on this basis can be considered, with equal appropriateness, as resting on quasi-promise or quasi-tort (quasi-deceit). It can be imposed as if the manufacturer had made a promise or representation directly to the consumer and as if the consumer had accepted the supposed promise or relied on the supposed representation. In

either case, the fiction transcends the actual contract made between the manufacturer and his immediate vendee, and establishes a clean-cut legal bond directly between manufacturer and consumer. Privity of contract is no longer a consideration.

"Theories of third party beneficiaries, warranties running with the goods, and consumers' purchasing agents are unsatisfactory not because they are based on fictions but because they are based on inadequate fictions. (It is not enough merely to allow the consumer crumbs from a table set for the wholesaler.) Even courts that verbally accept these approaches repudiate them in practice by ignoring the existence and nature of the implied warranties, if any, actually raised between the manufacturer and the wholesaler.

"The simplest approach is to create a direct liability to the consumer without fiction or analogy. Because the situation it deals with arises normally as a result of a sale by the manufacturer, this kind of liability is likewise appropriately, though not necessarily, incorporated into the miscegenous household of 'warranty.' The characterization of its various aspects as 'contract' or 'tort' could follow in due time without making these processes necessary steps in the generation of the obligation. Few courts have heen so bold."

This view has received the approval of the Supreme Court of Ohio. In the case of **Kniess v. Armour & Co., 134 Oh St 432, 17 N. E. (2d) 734,** the principal question had to do with the right of a non-resident corporate defendant, the manufacturer of a food product that had been joined with a resident defendant, the local distributor of the product, to have the action removed to Federal Court on the ground of diversity of citizenship. In holding the request should have been granted, the court, in paragraphs one and two of the syllabus, said:

"1. Where a citizen of Ohio and a citizen of another state are joined as defendants, the cause should be removed to the federal courts when a separable controversy exists between the resident plaintiff and the nonresident defendant.

"2. In an action against a packer and a retailer of food for damages resulting from the sale of unwholesome food, the liability of the packer is primary and that of the retailer secondary, and under ordinary circumstances they cannot be joined as joint tort-feasors."

And on page 442, in defining the character of actions that could be maintained against both the retailer and the manufacturer of food, the court said:

"We, therefore, must conclude that the theory upon which an action can be maintained against Burmeister as a retailer for the sale of unwholesome food can be predicated on either contract or tort, and that the adoption of §12760 GC, has not changed the underlying theory of the cause of action.

"What is, however, the theory upon which a manufacturer or packer is held liable to the ultimate consumer of unwholesome food sold through a retailer? Some few courts have said that there was an implied warranty of wholesomeness and consequently there was privity of contract. Others have said that if the negligence of the manufacturer

in preparing the food causes damage to the ultimate consumer, that fact could reasonably be anticipated and privity of contract is not essential. Some have allowed a recovery either upon the theory of negligence or contract, but not both. The sale most frequently has been likened to that of poisonous drugs and injurious patent medicines, where the careful compounding is demanded by public policy. See 17 A. L. R. 672; 39 A. L. R. 992; 63 A. L. R. 344; 105 A. L. R. 1502; 111 A. L. R. 1239.

"It seems to the court that of all of these theories, the one last mentioned is the most persuasive. Public policy demands that care and caution should be exacted from manufacturers of food who sell for the purposes of general disposition and sale to the general public. In other words the manufacturer or packer warrants to the public generally that the goods produced are fit for human consumption. See 42 Harvard Law Rev. 414."

The requirement of privity as the basis for an action for breach of an express warranty in the sale of personal property has become the subject of many articles and treatises in law reviews and other legal publications. In Volume 1 of the Revised Edition (1948) of Williston on Sales, paragraph 244a was added. See also Chapter II, headed "Manufacturers' and Wholesalers' Responsibility to Consumers for Unwholesome Food," by Reed Dickerson (1951), 19 N. C. Law Review, page 531 (April 1941). "Privity of Contract as a Requisite for Recovery on Warranty" by James A. Spruill, Jr.: Western Reserve Law Review, Vol. VII (1951) page 94, "Liability of the Manufacturer to the Ultimate Consumer for Breach of Warranty in Ohio"; Virginia Law Review, Vol. 19, page 242, "Innocent Misrepresentations" by Green; Minnesota Law Review, Vol. 22, page 939, "A Synthesis of the Law of Misrepresentation" by Harper & McNeely; Syracuse Law Review, Vol. 3, page 106, "Liability of Manufacturer for Harm Done by Product" by Miller. These are but a few of many authoritative writings, many of which are cited in the leading cases, which depart from the requirement of privity. Paragraph 244a of Williston on Sales, supra, which appears for the first time in the latest edition (1948), indicates the trend and provides:

"If it be granted that a subpurchaser as such is not entitled to the benefit of a warranty given to the original buyer, it yet may be asked may not the original seller by means of labels, advertisements or otherwise bind himself by a warranty to anyone who thereafter buys his goods. Certainly manufacturers often make representations to the public, which if made directly to an immediate buyer would amount to warranties. The difficulty which most courts seem to feel in allowing the subpurchaser a remedy is based on the assumption that the liability of a warrantor is contractual, and, therefore, can only run directly between a purchaser and his immediate seller. This argument does not seem impressive as an original question. A warranty is in many cases imposed by law not in accordance with the intention of the parties; and in its origin was enforced in an action sounding in tort, based on the plaintiff's reliance on deceitful appearances or representations, rather than on a promise, and where forms of action are still differentiated, an action of tort is generally allowed even at the present day. It must

be admitted, however, that most courts might require the existence of a direct contractual relation. This relation, however, might under some circumstances exist between manufacturer and subpurchaser and conceivably even between the manufacturer and a consumer who is neither a purchaser nor subpurchaser. A general offer like an offer of reward may be made to any who will buy; and though this does not often happen, illustrations may be found in the sale of well-known articles such as 'Holeproof' hosiery and Ingersoll watches."

The case which defendant relies on as supporting the judgment entered on the second and third causes of action is **Wood v. The General Electric Co., 159 Oh St 273**, 112 N. E. 2d 8. The plaintiff had purchased an electric blanket which set fire to his house after less than two months of use. The petition contained two causes of action, one for a breach of implied warranty, the other for the negligent manufacture of the blanket and failure to inspect and for failure to warn plaintiff of its dangerous condition. The court held in the second paragraph of the syllabus:

"2. Although a subpurchaser of an inherently dangerous article may recover from its manufacturer for negligence, in the making and furnishing of the article, causing harm to the subpurchaser or his property from a latent defect therein, no action may be maintained against a manufacturer for injury, based upon implied warranty of fitness of the article so furnished."

From the statement of facts as found on page 275, the case is to be distinguished from the case at bar because of the failure to allege or attempt to prove that the purchaser of the blanket was induced to buy it by the direct representations of the General Electric Company, nor was the issue of an express warranty presented. It should also be noted that the question of implied warranty was apparently not specifically called to the attention of the reviewing court by the plaintiffs. The plaintiffs' claim of error was that the charge on contributory negligence was not confined to the cause of action based on negligence. The Supreme Court said on page 278 of the opinion:

"There is another reason why the charge of the court on contributory negligence was not prejudicial to the plaintiffs as it related to the subject of implied warranty. The blanket in question was purchased in the original package from an independent dealer. To support an implied warranty there must be contractual privity between the seller and buyer."

The case of **Krupar v. Procter & Gamble Co., 160 Oh St 489**, 117 N. E. 2d 7, is also cited but the question of warranty was found by the court not to be an issue in the case.

The case of **Jordon v. Brouwer, 86 Oh Ap 505**, 93 N. E. 2d 49, is also cited. This case was one in which it was alleged that "antifreeze," because of its dangerous chemical content, damaged the radiator of plaintiff's car. The plaintiff alleged an express warranty through advertising on the labels of the cans used by the defendant to deliver its product to the purchaser. The action was brought by the ultimate consumer, (who purchased the antifreeze from a retailer), against the manufacturer. There is no doubt that the majority of the court held that the plain-

tiff could not maintain an action based on a claim of express or implied warranty where privity could not be established between the parties. However, the dissenting opinion is far more persuasive under modern trends.

Of the many cases cited by the foregoing authorities as representing the trend of the law on the subject of privity, the case of Baxter v. Ford Motor Co. 168 Wash. 456, 12 P. (2d) 409, 88 A. L. R. 521, best demonstrates such trend. The plaintiff's action was against both the dealer and manufacturer of Ford automobiles for damages sustained by shattered glass which destroyed one of plaintiff's eyes when the windshield was struck by a pebble thrown from the road by a passing automobile. The dealer was dismissed from the case. The case against Ford was based on its published representation that the glass used in the windshield was so made that it would not fly or shatter under the hardest impact. The trial court dismissed the action against Ford because there was no privity of contract between Ford and the plaintiff, he having purchased the car from an independent dealer.

In the first paragraph of the headnotes of the American Law Reports, supra, it is said:

"An automobile manufacturer may, notwithstanding there was no privity of contract between them, be liable to a purchaser of a car from a dealer for injuries to such purchaser by flying glass when a pebble thrown by a passing car struck the windshield where the manufacturer in its advertising represented that the glass in the windshield was so made that it would not fly or shatter under the hardest impact."

And on page 525 of this report, the court said:

"The vital principle present in the case of Mazetti v. Armour & Co. (75 Wash. 622, 135 P. 633, 634) supra, confronts us in the case at bar. In the case cited the court recognized the right of a purchaser to a remedy against the manufacturer because of damages suffered by reason of a failure of goods to comply with the manufacturer's representations as to the existence of qualities which they did not in fact possess, when the absence of such qualities was not readily discoverable, even though there was no privity of contract between the purchaser and the manufacturer.

"Since the rule of caveat emptor was first formulated, vast changes have taken place in the economic structures of the English speaking peoples. Methods of doing business have undergone a great transition. Radio, bill-boards, and the products of the printing press have become the means of creating a large part of the demand that causes goods to depart from factories to the ultimate consumer. It would be unjust to recognize a rule that would permit manufacturers of goods to create a demand for their products by representing that they possess qualities which they, in fact, do not possess, and then, because there is no privity of contract existing between the consumer and the manufacturer, deny the consumer the right to recover if damages result from the absence of those qualities, when such absence is not readily noticeable.

" 'An exception to a rule will be declared by courts when the case is not an isolated instance, but general in its character, and the existing

rule does not square with justice. Under such circumstances a court will, if free from the restraint of some statute, declare a rule that will meet the full intendment of the law.' Mazetti v. Armour & Co., supra."

In the case of Burr v. Sherwin-Williams Co., 42 Cal. (2d) 682, 268 P. (2d) 1041, the action was between a cotton planter as plaintiff (who came into the use of defendant's insecticide through a cooperative association) and the manufacturer of the insecticide, which, it was charged, when sprayed on plaintiff's cotton crop, caused damage to the crop. Many questions were presented involving the doctrine of res ipsa loquitur, warranties under the statutes of California, disclaimer of warranty printed on labels, etc. But on page 695, the court begins a consideration of the need of privity in claiming a breach of express or implied warranty, and on page 696, the court says:

"Another possible exception to the general rule is found in a few cases where the purchaser of a product relied on representations made by the manufacturer in labels or advertising material, and recovery from the manufacturer was allowed on the theory of express warranty without a showing of privity. See Free v. Sluss, 87 Cal. App. 2d Supp. 933, 936-937 (197 P. 2d, 854) (soap package contained printed guarantee of quality); Bahlman v. Hudson Motor Car Co., 290 Mich. 683 (288 N. W. 309, 312-313) (automobile manufacturer represented top of car to be made of seamless steel); Baxter v. Ford Motor Co., 168 Wash. 456 (12 P. 2d 409, 15 P. 2d 1118, 88 A. L. R. 521) (automobile manufacturer represented windshield to be nonshatterable glass); Simpson v. American Oil Co., 217 N. C. 542 (8 S. E. 2d 813, 815-816) (representation on label that insecticide was nonpoisonous to humans); Prosser on Torts (1941) 688-693; 1 Williston on Sales (Rev. Ed. 1948) 648-650; Fesser, 'Manufacturer's Liability for Injuries Caused by His Product,' 37 Mich. L. Rev. 1; Jean-blanc, 'Manufacturer's Liability to Persons Other than Their Immediate Vendees,' 24 Va. L. Rev. 134, 146-155. Neither exception is applicable here. The facts of the present case do not come within the exception relating to foodstuffs, and the other exception, where representations are made by means of labels or advertisements, is applicable only to express warranties. As we have seen, the instruction involved here dealt only with implied warranties. Accordingly, it was error for the trial court to instruct that privity was not required.

"The question of whether plaintiffs could recover because of breach of an express warranty was apparently not presented to the jury, but, since there may be a new trial, it is appropriate to point out that the record contains sufficient evidence to show that there were representations which could form the basis of an express warranty."

In the case of Collum v. Pope & Talbot, Inc., 135 Cal. App. 2d 653, 283 P. 2d 75, it was held that privity was unnecessary in cases involving foodstuffs and in a few cases where the buyer relied on the manufacturer's representations by advertisements or labels. And in Worley v. Procter & Gamble Mfg. Co. 241 Mo. App. 1114, 253 S. W. 2d 532, it was held that in case of food products sold in original packages and other articles, if dangerous to life if defective, representations directed to the ultimate consumer by the manufacturer being inducements to the buyer

must be considered as warranties implied by law imposing liability for injuries to the consumer irrespective of any contractual obligation on the vendor. See also United States Pipe & Foundry Co. v. Waco, 130 Tex. 126; Graham v. Watts & Sons, 238 Ky. 96.

Quoting again from 19 N. C. Law Rev., page 552, supra:

"It has been said of warranty that 'A more notable example of legal miscegenation could hardly be cited.' It originated in tort as a species of relief for misrepresentation. Later there was added to this concept of warranty another which was consensual in nature. In time special assumpsit rather than trespass in the case for deceit became the normal remedy for breach of warranty and men came to think of warranty as contract. But the old remained along with the new. Consequently warranty is neither tort or contract. It is both." (Emphasis added.)

The basis of an express warranty is first a representation as to the quality of the goods followed by reliance thereon as an inducement for entering into a sales agreement for the purchase of personal property. Where such representation is made and relied upon, an express warranty results. This is not to say that a manufacturer who does not make public representations to induce the sale of his product is to be held liable to the ultimate consumer without privity upon any other basis than negligence in the process of manufacture or use of materials. But an artificial rule of law of doubtful parentage should not protect one from liability where his representations are the inducing cause of the sale from which he is undoubtedly benefited.

From the foregoing authorities it is clear that the absence of privity cannot be pleaded as a bar to liability in all cases where the ultimate consumer brings an action against the manufacturer for damages suffered in the use of his product. The basic question underlying liability is whether or not the manufacturer induced the sale of his goods by direct representations of quality which were not true and the purchaser relied on such representations to his damage.

Where a manufacturer induces the purchase of his products by an ultimate consumer by representations as to their quality, purposes and uses, which are relied on by the purchaser, and where such representations are untrue so that the purchaser is damaged in using the product for the purpose as advertised, the common law theory of express warranty should be available to the purchaser regardless of privity. If this is not true, then where the dealer sells at the request of the buyer without express warranty (the buyer having been induced to buy through the manufacturer's representations), and the law of the case of McMurray v. Vaughn's Seed Store, 117 Oh St 236, paragraph 4 of the syllabus, is in point on the facts, and the law of the case of Wood v. General Electric Co., supra, is also in point, then even though the plaintiff was injured because the product did not square with the representations that induced the sale, he would be without a remedy if unable to prove fault in the process of manufacture under the case law of Ohio. Paragraph 4 of the McMurray case provides that:

"4. Where a dealer sells an article of merchandise in the original package as it comes from the manufacturer, and the customer buys it

knowing there has been no inspection by the dealer, there is no implied warranty, and, in the absence of an express warranty or representation, such dealer is not liable to the purchaser for damages caused by any deleterious substance in such merchandise the presence of which he had no knowledge."

Paragraph 2 of the syllabus of Wood v. The General Electric Company, supra, provides:

"2. Although a subpurchaser of an inherently dangerous article may recover from its manufacturer for negligence, in the making and furnishing of the article, causing harm to the subpurchaser or his property from a latent defect therein, no action may be maintained against a manufacturer for injury, based upon implied warranty of fitness of the article so furnished."

Here the facts pleaded are that the plaintiff purchased defendant's "Toni Home Permanent" from an independent dealer on the faith of representations published by the defendant, the defendant's product being delivered through the independent dealer in a sealed container; that the representations of the defendant made directly to the ultimate consumer were that "Toni Home Permanent" could be used, if directions were followed, in complete safety to the user; that the plaintiff did follow defendant's directions for use, with the result that she lost her hair to within one-half inch of her scalp. These facts, as pleaded, are sufficient to state a cause of action for breach of an express warranty against the defendant.

The judgment for defendant entered on the second cause of action of the second amended petition is, therefore, reversed and the cause is remanded with instructions to overrule the demurrer thereto, and for further proceedings according to law.

Our conclusion as to the third cause of action would follow our judgment as to the second cause of action were it not for the second paragraph of the syllabus of Wood v. The General Electric Company, supra. Because of the law there clearly determined, a breach of an implied warranty of fitness or merchantability cannot be redressed except where there is privity between the parties, which conclusion we are bound to follow. We are compelled to hold that the plaintiff's claim of error in sustaining the defendant's demurrer to her third cause of action must be overruled.

Exception noted. Order see journal.

KOVACHY, PJ, HURD, J, concur.

No. 23928. Decided February 4, 1957.

250

## OPINION

By SKEEL, J:

In ruling on the motion to certify, we desire to add just a word to the opinion filed in this case.

The granting of defendant's motion to certify is based on the conflict between our decision in this case and that of the Hamilton County Court of Appeals in the case of **Jordon v. Brouwer, 86 Oh Ap 505, 93 N. E. (2d) 49.** In that case the majority of the court held that there could be no action "against such manufacturers by such subpurchaser for injury to his chattel based upon either express or implied warranty," the conflict being that our holding sustains the right of a subpurchaser to maintain an action on an express warranty made out by direct representation of the manufacturer to induce an ultimate consumer to purchase and use his goods.

In seeking the legal breadth of the word "warranty," under modern trends, we should, in the words of Justice Frankfurter, in National Mut. Ins. Co. v. Tidewater Transfer Co., 337 U. S. 582, at 646, "gather (its) meaning from experience." The fact that the sales code seems to deal with relationships between the parties to a sales contract in no way deprives its principles (the definition of an express warranty) from having application to like circumstances when a sale is induced by representations made by the manufacturer to and relied upon by a subpurchaser from a dealer to whom the manufacturer sold his goods, knowing the disposition of the goods to the dealer was only for the purpose of making them available to the ultimate purchaser. When first used in a sales transaction, the term "warranty" was not understood to describe a promise within the terms of the contract to sell or of sale but was, in fact, a representation collateral to such an agreement. The meaning to be gathered from modern economic trends is to ascribe to the term "warranty" a meaning more like that ascribed to it in its original use in sales contracts rather than as subsequently true when courts forced the element of privity into its meaning to coincide with the commercial practices of that day. The strength of our common law is to be found in the fact that it "gathers meaning from experience." The common law must stay in tune with social progress.

A rule which holds that the father and purchaser of food for his

family has an implied warranty of its fitness for the purpose intended but that his children, who are injured because of its unwholesomeness, are not thus favored, as was held in Hazelton v. First National Stores, 88 N. H. 409, 190, Atl. 280, is most illogical and should not be sustained by the courts.

A manufacturer who makes public representations as to the character or quality of his product, which induced their purchase by a subpurchaser, who relies and acts upon such representations to his damage, such representation being untrue, is entitled to maintain an action for his damage on the theory of an express warranty. Such obligation is one imposed by law.

On the question of the liability of the defendant on an implied warranty (the third cause of action), where the product was one for personal use, we concluded we were bound by the second paragraph of the syllabus of the case of **Wood v. General Electric, 159 Oh St 273, 112 N. E. (2d) 8.** The distinction between an express and an implied warranty is one of great difficulty. Even the attempted definitions in the sales code are hard to distinguish from direct representations, such as sales by sample or by description. There are many cases holding the manufacturer liable to the ultimate consumer on implied warranty of "fitness for the purpose intended" where the product is a drug, as here, or a food product, or in some cases, where the product would be potentially dangerous if not properly manufactured.

This theory was spoken of in **Sicard v. Distributing Co., 133 Oh St 291, 13 N. E. (2d) 250** and in **Kniess v. Armour & Co., 134 Oh St 432, at 442, 17 N. E. (2d) 743,** and approved when the court said that:

"In other words the manufacturer or packer warrants to the public generally that the food produced is fit for human consumption."

The only way this statement can be reconciled with the second paragraph of the syllabus of the Wood case, supra, is that in the Wood case the product was an electric blanket and not food or drugs.

As a result of the Wood case, supra, we have not cited **Ward Baking Co. v. Trizzino, 27 Oh Ap 475, 161 N. E. 557,** in support of the law applicable here because of the feeling it would not be persuasive in the Supreme Court. It must be remarked, however, that this Ohio Appellate Court decision is cited favorably in almost every law review article or authoritative writing on the subject since the date it was decided and is to be found as a leading authority in the opinions of many courts of last resort in other states. Its wide and favorable acceptance as an authority that the manufacturer impliedly warrants the merchantability of food produced by him must, at least, add something to its persuasiveness on this subject. Also in **35 O. Jur. 886, paragraph 155,** many of the authorities cited in our opinion are referred to as indicating the changing trend eliminating the need for privity in actions based on express and implied warranty.

See also Klein v. Duchess Sandwich Co., 14 Cal. 2d 272, 93 P. 2d 799; Davis v. Van Camp Packing Co., 189 Iowa 775, 176 N. W. 382, 17 A. L. R. 649; Decker & Sons v. Capps, 139 Tex. 609, 164 S. W. 2d 828, 142 A. L. R. 1479; and cases cited in annotation. Also see Prosser on Torts, Second Edition, Chapter 17, page 497.

Under what is the trend of the great majority of the decisions of courts of last resort, we might have distinguished the second paragraph of the syllabus of the Wood case, supra, from the case here considered and found it not to be controlling, thus sustaining the allegation of the third cause of action as stating sufficient facts to make out a case. However, since this case is being certified, the legal question presented in challenging the sufficiency of the allegations of the third cause of action will, unquestionably, be settled.

KOVACHY, PJ, HURD, J, concur.