INGLIS, PLAINTIFF-APPELLANT, *v.* AMERICAN MOTORS CORPORATION ET, DEFENDANTS-APPELLEES.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26667. Decided April 23, 1964.

Messrs. *Ulmer, Berne, Laronge, Glickman & Curtis*, for plaintiff-appellant.

Messrs. *Jones, Day, Cockley & Reavis*, for defendants-appellees.

440

SILBERT, J. This appeal comes to this court on questions of law from a judgment entered in the Cleveland Municipal Court for defendants-appellees, American Motors Corporation and American Motors Sales Corporation, by the sustaining of a demurrer as to the first, second and third causes of action of the petition. Plaintiff-appellant not desiring to plead further, the court entered judgment for the defendants-appellees on the first, second and third causes of action of the petition. This action is still pending against defendant, Sheffler Rambler, Inc., which is not involved in this appeal.

In his petition plaintiff-appellant alleges that he purchased an automobile from defendant, Sheffler Rambler, Inc., as authorized agent and dealer for defendants-appellees, American Motors Corporation, who manufactured said automobile, and American Motors Sales Corporation, who distributed said automobile. The petition contains four causes of action, the last of which—for fraudulent misrepresentation—is not before us on this appeal. The three causes of action subject to the appeal are (1) breach of express warranty, (2) breach of implied warranty, and (3) negligence.

The first cause of action alleges that the purchase by plaintiff-appellant was induced by express warranties and representations of defendants-appellees by their advertising in mass communications media to the effect that Rambler automobiles are trouble-free, economical in operation, and built and manufactured with a high quality of workmanship.

It is further alleged that the cargo area door was out of line, could not be opened, and continuously squeaked and rattled; that the rubber stripping around said door was ripped; that the side doors and windows squeaked and rattled; that all four side doors were out of line; that the automobile contained an

inadequate amount of sound deadener; that the motor was noisy and defectively cast and bore a hole that seeped oil; that the steering wheel was improperly set and creaked when turned; that the transmission made a groaning noise; that the brakes squeaked and grated; that the gas pedal squeaked when depressed; that the oil pump assembly was defective; that the windshield wiper failed to function properly; that one of the shock absorbers was defective; that certain parts of the radio vibrated; that the front seat squeaked and rocked; that the chrome strips on the exterior were loose; that loose parts inside the car would from time to time fall, endangering driver and passengers; and that gas mileage was no more than twelve miles to a gallon; that upon discovery of these defects plaintiff-appellant called them to the attention of defendants, but they failed and refused to correct same. Plaintiff-appellant says that by reason of such defects defendants-appellees breached their express warranties and that his automobile has diminished in value; that he has suffered damage therefrom. It should be noted that the majority of the defects set out above are latent and were not readily ascertainable at the time of purchase.

The second cause of action incorporates all the allegations set forth in the first cause of action and alleges that the plaintiff-appellant relied on defendants-appellees' skill and judgment and superior knowledge as to quality and fitness of the automobile and that defendants-appellees impliedly warranted that the automobile was a fit and useful automobile for the purpose of travel and transportation; that the automobile was not reasonably fit and useful for the purposes warranted. It is further alleged that the plaintiff-appellant relied on the implied warranty of fitness and because of hidden, latent and complex defects the automobile was unfit for usual travel and transportation; that the automobile had diminished in value therefrom.

The third cause of action incorporates all the allegations set forth in the first and second causes of action and alleges that the defendants-appellees were negligent in inspecting the automobile prior to delivery and that the alleged defects should have been discovered before delivery to plaintiff-appellant. It is further alleged that as a direct result of defendants-appel-

lees' negligence plaintiff-appellant has suffered loss of the automobile and has been put to considerable annoyance, inconvenience, expense and loss of time and money, and has been damaged therefrom.

Prayer is for compensatory and exemplary damages.

Defendant, Sheffler Rambler, Inc., demurred to the petition on the ground of misjoinder of parties defendant, which was overruled.

Thereafter, defendants-appellees' demurrer was sustained as to the first, second and third causes of action because of the absence of privity between themselves and plaintiff-appellant.

Plaintiff-appellant assigns the following errors:

1. The court below committed error prejudicial to plaintiff-appellant in sustaining the demurrer to plaintiff-appellant's first cause of action.

2. The court below committed error prejudicial to plaintiff-appellant in sustaining the demurrer to plaintiff-appellant's second cause of action.

3. The court below committed error prejudicial to plaintiff-appellant in sustaining the demurrer to plaintiff-appellant's third cause of action.

We will first address ourselves to Assignment of Error No. 1. It must be said that the prerequisite of privity of contract in an action on warranty of sale of goods had its genesis in the dicta of the famed case of *Winterbottom* v. *Wright*, 152 Eng. Rep., 402, well over a hundred years ago. Therefore, no right of action grounded in warranty would inure to a person not in privity of contract with the manufacturer. The sometimes harsh results emanating from this principle prompted the courts in the interests of justice to assuage these results by making exceptions to this principle. A Plethora of exceptions developed excluding privity in cases involving intrisically dangerous articles, victuals for human consumption, products sold in original packages, to mention a few. Thus, many courts have uttered that the exceptions have swallowed the rule. In *Rogers* v. *Toni Home Permanent Co.*, 105 Ohio App., 53, 139 N. E. (2d), 871, Skeel, J., had the following to say in this regard:

"The cases dealing with the requirement of privity in an action for breach of warranty (express or implied) are in hopeless conflict with a growing tendency (for one reason or an-

other) to sidestep or ignore such requirement. The reasons for permitting recovery against the manufacturer by the subpurchaser, when such action is permitted, are based in some jurisdictions, on the character of the product. If the product is food, a drug or is of an inherently dangerous character, recovery is permitted without privity on grounds of public policy, while the purchaser of other chattels is not permitted such right. These distinctions are hard to justify. * * *."

In *Spence* v. *Three Rivers Builders & Masonry Supply*, 353 Mich., 120, 90 N. W. (2d), 873, it is said:

"There are other equally impressive and ominous catchphrases, and awesome have been some of the semantic bogs negotiated by ours and other appellate courts when in particularly harsh cases they have attempted by such artificial 'exceptions' to get around the barrier imposed by their own equally artificial 'general rule' of nonliability."

Courts today have taken cognizance of the evolution of merchandising whereby today's retailer, as contrasted to one in bygone days, is in most instances the conduit through which sales are made. Through this change of relationship the purchaser has relied solely on the reputation of the manufacturer and its advertising which is disseminated through various media such as television, radio, newspapers and the like, extolling the virtues of the product and is primarily directed at the ultimate consumer. From the cumulative efforts of this advertising and upon its reliance, the sale is made before the purchaser ventures to the retailer's place of business.

There has been a growing tendency on the part of courts through sound public policy to deem the protection of the public important enough to cast aside the requirement of privity and hold the manufacturer liable to the ultimate purchaser. This has been reflected in an excellent article by Walter H. E. Jaeger in 16 Rutgers Law Review, 493, "Warranties of Merchantability," where at page 557 it is said:

"All of what has been said seems to indicate that the more progressive courts are traveling the road to absolute liability on the part of manufacturers and producers of foodstuffs and related products. That there is even a tendency to enlarge this liability to include other products which may be hazardous to the user, and in some jurisdictions, to articles which merely

cause property damage, is discernible in the more recent decisions.

"* * *

"What conclusions are to be drawn from the case law, especially the more recent decisions involving the warranties of merchantability and fitness for use? Clearly, the concept of privity of warranty is on the wane. In food and related cases, a majority of the jurisdictions may well have discarded it altogether, and the exceptions made by the minority have drastically reduced its effectiveness. Another significant development is the elimination of the requirement in situations where the product has injured the purchaser or user. And now, there is a further extension of consumer protection in the case of articles which only cause property damage, not personal injury."

In *Randy Knitwear, Inc.* v. *American Cyanamid Company*, 11 N. Y. (2d), 5, 181 N. E. (2d), 399, which held the manufacturer liable for breach of express warranty for the shrinkage of fabrics notwithstanding the fact that there was no privity between the parties, the court said:

"The rationale underlying the decisions rejecting the privity requirement is easily understood in the light of present-day commercial practices. It may once have been true that the warranty which really induced the sale was normally an actual term of contract of sale. Today, however, the significant warranty, the one which effectively induces the purchase, is frequently that given by the manufacturer through mass advertising and labelling to ultimate business users or consumers with whom he has no direct contractual relationship.

"The world of merchandising is, in brief, no longer a world of direct contract; it is, rather a world of advertising, and, when representations expressed and disseminated in the mass communications media and on labels (attached to the goods themselves) prove false and the user or consumer is damaged by reason of his reliance on those representations, it is difficult to justify the manufacturer's denial of liability on the sole ground of the absence of technical privity. Manufacturers make extensive use of newspapers, periodicals, and other media to call attention, in glowing terms, to the qualities and virtues of their products, and this advertising is directed at the ultimate

consumer or at some manufacturer or supplier who is not in privity with them. Equally sanguine representations on packages and labels frequently accompany the article throughout its journey to the ultimate consumer, and, as intended, are relied upon by remote purchasers. Under these circumstances, it is highly unrealistic to limit purchaser's protection to warranties made directly to him by his immediate seller. The protection he really needs is against the manufacturer whose published representations caused him to make the purchase.''

The Supreme Court of Ohio, in *Rogers* v. *Toni Home Permanent Co.*, 167 Ohio St., 244, 147 N. E. (2d), 612, in holding that the ultimate consumer who suffered personal injury from the use of a product may maintain an action directly against the manufacturer on the basis of express warranty notwithstanding there is no direct contractual relationship between them, said:

''It must be confessed that the prevailing view is that privity of contract is essential in an action based on a breach of an express or implied warranty, and that there is no privity between the manufacturer of an article and the ultimate purchaser thereof from a retailer, where the ultimate purchaser was in no way a party to the original sale. * * *''

''However, there is a growing number of cases which, as an exception to the general rule, hold that as to foodstuffs and medicines, particularly when sold in cans, capped bottles or sealed containers, a warranty of fitness for human consumption carries over from the manufacturer or producer to the ultimate consumer, regardless of privity of contract. * * *''

''It would seem but logical to extend the rule last cited to cosmetics and other preparations, which are sold in sealed packages and are designed for application to the bodies of humans or animals. * * *''

'' * * *

''Occasions may arise when it is fitting and wholesome to discard legal concepts of the past to meet new conditions and practices of our changing and progressing civilization. Today, many manufacturers of merchandise, including the defendant herein, make extensive use of newspapers, periodicals, signboards, radio and television to advertise their products. The worth, quality and benefits of these products are described in

glowing terms and in considerable detail, and the appeal is almost universally directed to the ultimate consumer. Many of these manufactured articles are shipped out in sealed containers by the manufacturer, and the retailers who dispense them to the ultimate consumer are but conduits or outlets through which the manufacturer distributes his goods. The consuming public ordinarily relies exclusively on the representations of the manufacturer in his advertisements. What sensible or sound reason then exists as to why, when the goods purchased by the ultimate consumer on the strength of the advertisements aimed squarely at him do not possess their described qualities and goodness and cause him harm, he should not be permitted to move against the manufacturer to recoup his loss. In our minds no good or valid reason exists for denying him that right. Surely under modern merchandising practices the manufacturer owes a very real obligation toward those who consume or use his products. The warranties made by the manufacturer in his advertisements and by the labels on his products are inducements to the ultimate consumers, and the manufacturer ought to be held to strict accountability to any consumer who buys the product in reliance on such representations and later suffers injury because the product proves to be defective or deleterious. * * *"

In *Jarnot* v. *Ford Motor Co.*, 191 Pa. Super., 422, 156 A. (2d), 568, it was held that where a manufacturer restorted to various advertising media to extol its product endeavoring to persuade the public to buy, it "may thereby incur liability to a purchaser notwithstanding privity between the purchaser and the manufacturer is wholly lacking."

Defendants-appellees contend that since there is no personal injury alleged, privity is a necessary element to state a cause of action for breach of express warranty.

The case at bar is one of property damage where there has been a diminution of value of an automobile attributable to certain alleged defects. Dean William L. Prosser in 69 Yale Law Journal, 1099, "Strict Liability to the Consumer," had the following to say at page 1143:

"* * * Damage to property has been slow to appear, for the obvious reason that nearly all of the products thus far involved have been those intended for bodily use. There is no

sensible reason for distinguishing between the two kinds of damage. * * *''

In *Randy Knitwear, Inc.* v. *American Cyanamid Company, supra,* it is stated:

''We perceive no warrant for holding—as the appellant urges—that strict liability should not be here imposed because the defect involved, fabric shrinkage, is not likely to cause personal harm or injury. Although there is language in some of the opinions which appears to support Cyanamid's contention (* * *), most of the courts which have dispensed with the requirement of privity in this sort of case have not limited their decisions in this manner. (* * *) And this makes sense. Since the basis of liability turns not upon the character of the product but upon the representation, there is no justification for a distinction on the basis of the type of injury suffered, or the type of article or goods involved.''

It is stated in *Spence* v. *Three Rivers Builders & Masonry Supply, supra*:

''We can also find no reason in logic or sound law why recovery in these situations should be confined to injuries to persons and not to property * * *.''

A somewhat analogous case is found in *Lewis* v. *Vin Devers Mercury, Inc.*, 111 Ohio App., 455, 173 N. E. (2d), 145, in which the Ford Motor Company was sued for damages emanating from the condition of an automobile which was not reasonably fit and proper for use for vehicular transportation and which did not remain in good operating condition under normal use and service. Although the petition alleged breach of implied warranty, under the rule of liberal construction of pleadings the court deemed the petition to contain a cause of action for breach of express warranty against the Ford Motor Company notwithstanding the fact that no privity existed between the parties.

This court can comprehend no reason to allow recovery in an action based upon breach of express warranty where one is seeking damages for personal injuries and bar property damages actuated by the same breach.

We determine and hold that the purchaser of an automobile who relies on mass media advertising of the manufacturer and its companion sales corporation to the effect that its automo-

biles are trouble-free, economical in operation, and built and manufactured with a high quality of workmanship, and suffers damage in the form of diminution of value of said automobile attributable to latent defects not readily ascertainable at the time of purchase, such as, the side doors being out of line, a defectively cast motor that seeped oil, and a defective oil pump assembly, may bring an action against the manufacturer and its companion sales corporation for breach of express warranty albeit no privity exists between the parties. Therefore, under the facts pleaded in the first cause of action of the petition a cause of action is stated and the judgment entered on the first cause of action is reversed and cause remanded with instructions to overrule the demurrer and for further proceedings according to law.

As to Assignment of Error No. 2, the Supreme Court in *Wood* v. *General Electric Co.*, 159 Ohio St., 273, 112 N. E. (2d), 8, followed in *Rogers* v. *Toni Home Permanent Co., supra*, has said that there must be contractual privity between the parties to an action to support an implied warranty. Under the rule of stare decisis, we are constrained to follow the law enunciated by the Supreme Court in the above cases. We, therefore, overrule Assignment of Error No. 2.

As to Assignment of Error No. 3, it is the law in Ohio that the manufacturer is not liable to third persons with whom he has no contractual privity for negligence in manufacturing or distributing a product except in those cases where personal injuries are caused by the product which is inherently or imminently dangerous when negligently made. *White Sewing Machine Co.* v. *Feisel*, 28 Ohio App., 152, 162 N. E., 633. We, therefore, overrule Assignment of Error No. 3.

Judgment is entered accordingly.

Exceptions. Order see journal.

ARTL, J., concurs.

KOVACHY, P. J., concurs in the affirmance of the judgment as to the second and third causes of action and dissents in the reversal of the judgment as to the first cause of action.