WHITE SEWING MACHINE CO. v. FEISEL.

Ohio Appeals, 6th Dist., Lucas Co.

No. 1941. Decided Nov. 28, 1927.

First Publication of this Opinion.

Syllabus by Editorial Staff.

829.—NEGLIGENCE.

Manufacturer of appliance which, if defective in construction, will become inherently or imminently dangerous when used for purpose for which it was intended, owes duty to public, irrespective of contractual relations, and will be liable to third persons for injury directly caused by negligence in failing to make reasonable inspection of such defective appliance, where injury was sustained while appliance was being used for purpose intended and where danger might reasonably have been foreseen by manufacturer.

Error to Common Pleas.

Judgment affirmed.

Fraser, Hiett, Wall & Effler, Toledo, for White Sewing Machine Co.

W. W. Campbell and Henry H. Crist, Toledo, for Feisel.

STATEMENT OF FACTS

On or about Sept. 3, 1926, the mother of the plaintiff purchased from the defendant an electric sewing machine, which was delivered to the house where lived the father and mother of the plaintiff, and brother of the plaintiff who was about three years old, and the plaintiff who was about one year old. There was sold and delivered with the machine an insulated cord about ten feet in length, on one end of which was a plug, so constructed as to fit into an electric wall socket, and on the other end a plug so made that it could be attached to the sewing machine, the purpose of the cord being to furnish electricity as power to run the electric motor. At the time of sale and delivery, the two children belonging in the family were in the room. While the agent wrote out the contract for the mother to sign, he pulled loose the end of the cord attached to the machine and allowed it to hang over the machine; but it remained attached at the other end to the wall socket. After sewing upon the machine a half or three-quarters of an hour after the agent left, the mother closed it up. She next opened it a week later, or about Sept. 10th, and after attaching the cord to the wall socket and to the machine, she was about to sew, when she discovered that her baby was restless, and pulled off the cord where attached to the machine and let it hang over the machine still attached to the wall socket, as the agent had done on his previous visit. She thereupon undertook to comfort the child and to do some hand sewing. A moment later the child gurgled. As the mother picked her up, the end of the cord on which was the socket which fit on the machine, fell from her mouth. At that time the rubber cap of the attachment slid down an inch or an inch and a half. The child was badly burned about the mouth and inside the mouth. She was taken to a physician and then to the hospital. A day or two later the mother took the cord to the office of the defendant and thereafter she took

it to the office of the attorneys, where it was placed in a safe and kept until the trial. When produced at the trial, the threads on the cap or attachment which made the connection with the machine were so far destroyed that it would no longer hold the cap in place at all but permitted it to slide down so as to expose the bare wires or copper connections for about half an inch.

### OPINION OF COURT.

The following is taken, verbatim, from the opinion.

WILLIAMS, J.

It is a general rule of law that a manufacturer or seller is not liable to third persons with whom he has no contractual relations, for negligence in the manufacture or sale of an article. 24 R. C. L., 512, Sec. 804 and cases cited. The general rule is grounded on the leading case of Winterbottom v. Wright, 10 M. & W. 109. This case has been frequently followed in the United States. 120 Fed. 865, 868. To this rule, however, many courts have recognized that exceptions exist.

The manufacturer of an appliance which, if defective in construction, will become inherently or imminently dangerous when used for the purpose for which it was intended, owes a duty to the public, irrespective of contractual relations, and it has been held in many cases that he will be liable to third persons for an injury directly caused by negligence in failing to make reasonable inspection of such defective appliance, where the injury was sustained while the appliance was being used for the purpose intended and where the danger might reasonably have been foreseen by the manufacturer.

An examination of the cases cited will disclose that while the rule was originally applied where the article of sale was "inherently" or "imminently" dangerous, it is now commonly invoked in cases where the dangerous character of the thing is made imminent by defective construction, which is the result of negligence, or would be discoverable upon exercise of ordinary care in making a reasonable inspection.

The rule applicable to the instant case and sustained by both the current and weight of authority, is stated by Cordoza, J., in the case of MacPherson v. Buick Motor Car Co. 217 N. Y. 382; 111 N. E. 1050; L. R. A. 1916-F. 696.

"We hold, then, that the principle of Thomas v. Winchester, 6 N. Y. 397, is not limited to poisons, explosives and things of like nature, to things which in their normal operation are impliments of destruction. If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing in danger."

Electricity is a highly dangerous element and the frequent use of electric appliances in the home in modern times has resulted in many injuries and deaths from electricity. A tool, machine or apparatus for use in the home, which employs electricity, is such a dangerous instrumentality as would require the manufacturer or seller to use ordinary care in the manufacture and inspection, to the end that the article may be so insulated as to be reasonably safe for use. Danger to members of the family from a defective appliance of this character is one to be foreseen by the manufacturer who sells it to one of the members of the family. The defendant was the manufacturer of the electric sewing machine. As to the appliance, it purchased the plugs and cord from other manufacturers, cut the cord and made the completed attachments. In connecting the alleged defective attachment to the cord it would be required, in order to complete it, to screw up the cap on the attachment. To all intents and purposes, the defendant was the manufacturer of the attachment as well as the sewing machine. The mere fact that it purchased the plugs from a reputable manufacturer, would not relieve it from the duty to make reasonable tests and inspections. The machine was sold for the express purpose of being used in the home, and with knowledge that there were children of tender years there, and the danger should have been foreseen. It further appears, from the evidence of plaintiff, that no instructions were given by the company with reference to the use of the appliance nor any warning given as to its dangerous nature. A duty rested upon the manufacturer toward the members of the family residing in the home, irrespective of contract.

It is contended, however, that in the instant case the apparatus was not being used at the time for the purpose intended. A sewing machine in a private home must necessarily remain idle a large part of the time. It is true that at the time the injuries were sustained the machine itself was not in operation; but it would be too narrow a construction to say that there would be no liability merely because, at the time of the injury, the machine was not being used for purposes of sewing. In fact the cord attachment was charged with electricity and, as its only purpose was to conduct electricity, it was performing the only function it could perform. It was being used for the purpose intended.

We find no error in the record to the prejudice of the plaintiff in error, and the judgment will therefore be **affirmed.**

(Richards, J., concurs. Lloyd, J., concurs in judgment.)