Steele, Admx., Appellant, v. Westinghouse Electric Corp., Appellee.*

(No. 234—Decided January 30, 1958.)

*Mr. Thomas F. Joseph* and *Mr. Forrest E. Sidener, Jr.,* for appellant.

*Messrs. Landis, Ferguson, Bieser & Greer* and *Messrs. Crabbe & Tanner,* for appellee.

*Per Curiam.* In this action for wrongful death, plaintiff, appellant herein, appeals on questions of law from a judgment for defendant, appellee herein, assigning as the sole ground of error the action of the Common Pleas Court in directing a verdict for the defendant at the end of plaintiff's evidence.

There was substantial evidence to show that plaintiff's decedent, while alone in a milk house, was electrocuted when his hand became caught between the top and the lid of a milk cooler manufactured by defendant, in which there was a short circuit; that the cooler had been delivered earlier in the day by one Roger Essig, a son-in-law of decedent's landlord, who was driving the landlord's truck; that the help of a neighbor was required to enable Essig, with decedent and his fourteen-year-old

*Motion to certify the record overruled, June 11, 1958.

son, to unload the cooler from the truck to the ground by use of skids; that the size of the cooler was such that they had to remove a barn door to get it into the milk house, where they connected it to an outlet with an electric cord; that they installed no ground wire; that apparently none of them was a trained electrician; that none of the witnesses saw any written instructions with the cooler; that decedent's son and Essig each received "slight" shocks from touching the cooler, and Essig promised to "send a man out to put a ground on that," but the evidence is not clear that decedent heard these words or had knowledge of these facts; that some time after the death of decedent two electricians came and removed the cover from a metal box on the motor housing, and found inside a wire or soldering lug protruding through a hole in a metal plate connected with the cooler cabinet; that the wire or soldering lug was in contact with the side of the hole in the metal plate, causing a short circuit and imparting a charge of 300 volts of electricity to the cabinet; and that when these contacting metal parts were separated by use of a lead pencil and friction tape the short circuit and the shocks experienced by those touching the cooler were eliminated, and the charge disappeared from the cabinet. There is no evidence as to when or how these metal parts came into contact with each other.

There is no privity of contract between the defendant manufacturer and the plaintiff or her decedent, so that the cause of action must rest upon the alleged negligence of the defendant manufacturer. *Durham* v. *Warner Elevator Mfg. Co.*, 166 Ohio St., 31, 139 N. E. (2d), 10; *Gilbride, Admx., v. James Leffel & Co.*, 37 Ohio Law Abs., 457, 47 N. E. (2d), 1015. The evidence indicated that neither the wire nor the soldering lug nor the metal was insulated, but that insulation of the bore or hole in the metal would have prevented the short circuit, and that the clearance between the metal and similar wires or lugs in the same unit was "a good eighth of an inch."

It is our opinion that the evidence presented a question for the jury to determine whether it was negligent to manufacture the appliance in this manner and design.

"*Electricity is a highly dangerous element*, and the frequent use of electric appliances in the home of modern times has re-

sulted in *many injuries and deaths from electricity. A tool, machine, or apparatus for use in the home, which employs electricity, is such a dangerous instrumentality as would require the manufacturer or seller to use ordinary care in its manufacture and inspection, to the end that the article may be so insulated as to be reasonably safe for use. Danger to members of the family from a defective appliance of this character is one to be foreseen by the manufacturer who sells it to one of the members of the family.*'' (Emphasis ours.) *White Sewing Mach. Co.* v. *Feisel,* 28 Ohio App., 152, at page 158, 162 N. E., 633.

Defendant argues that it was not responsible unless the device was "properly installed" with a ground wire. The evidence indicates that such was the proper method of installation as a matter of safety and that a ground wire probably would have prevented the injury. However, the equipment was usable and capable of running properly without being grounded and the ground was simply a proper safety device "in case something does go wrong." Without the defect in the equipment the safety measure was not needed. If its construction was faulty and hazardous, defendant can not escape liability because of subsequent failure to install a proper and customary safety device to protect against hazards arising from its own negligence, unless of course such failure was the result of contributory negligence.

This conclusion is in accordance with our understanding of the law of this state, as indicated by the authorities cited in the briefs and referred to above. The Ohio authorities cited by defendant pertain to situations where the evidence would have required the jury to guess or speculate in choosing between possible causes of the injury complained of, or between possible times when a defect arose. *Landon* v. *Lee Motors, Inc.,* 161 Ohio St., 82, 118 N. E. (2d), 147; *Lampe* v. *White Motor Sales Co.,* 20 Ohio App., 501, 152 N. E., 733; *Breck* v. *Rollaway Motor Co.,* 23 Ohio App., 79, 155 N. E., 147.

In the present case there is substantial evidence that the contacting metal proximately caused the lethal charge. Failure to ground the cooler was neither an alternate nor intervening cause, but merely the absence of interference between the existing cause and effect.

382

If the sole determining issue in this case were the time when the contact occurred, the jury would indeed have been required to speculate as to the fact. But the substantial evidence of the design of the mechanism, and the manner in which, as distinguished from the time when, the short circuit occurred therein, present a jury question whether the manufacture for use of such a device was negligent.

Defendant argues that decedent was himself negligent. Perhaps the evidence justified presenting this question to the jury. From the evidence in the record we cannot find contributory negligence as a matter of law.

The judgment is, therefore reversed, and the cause remanded for further proceedings according to law.

*Judgment reversed.*

HORNBECK, P. J., WISEMAN and CRAWFORD, JJ., concur.