Willie C. GOSSETT, Plaintiff-Appellee,

v.

CHRYSLER CORPORATION, a Delaware corporation, Defendant-Appellant.

No. 16255.

United States Court of Appeals
Sixth Circuit.

April 19, 1966.

---

Charles R. Taylor, Detroit, Mich., Ronald R. Pawlak, Detroit, Mich., on brief, for appellant.

William C. Ibershof, Detroit, Mich., Kenneth C. Davies, Detroit, Mich., on brief, for appellee.

Before WEICK, Chief Judge, PHILLIPS, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This is an appeal by Chrysler Corporation, defendant-appellant, from a judgment in the United States District Court for the Eastern District of Michigan in favor of Willie C. Gossett, plaintiff-appellee. Hereinafter we will refer to Gossett as plaintiff and to the defendant-appellant as Chrysler. The plaintiff was a driver-employee of Commercial Carriers, Inc. Chrysler was a manufacturer of motor vehicles, including Dodge motor trucks. Commercial Carriers, Inc. was engaged in delivering motor vehicles for Chrysler.

On April 26, 1960, the plaintiff was delivering three new Dodge trucks to a destination in New Jersey. He was driving the largest truck which was a frame on wheels with no body, cab or windshield. The second truck was mounted on top of the first or drive truck and the third truck was pulled by a tow bar fastened to the frame of the drive truck. This arrangement of trucks was referred to as a three way strip. It is claimed that while the plaintiff was driving in Ohio on U. S. Route 20, the hood of the drive truck became disengaged and came up in front of him, so as to obscure his vision. Because of this he failed to make a turn in the road and was seriously injured when his trucks went into a ditch at the side of the road.

The plaintiff brought an action against Chrysler. In his complaint he charged Chrysler with negligence,

"which negligence consisted of improperly designing said hood latch, improperly manufacturing and assembling

said hood latch and in failing to properly test and inspect said hood latch, * * *."

The case was tried to a jury and a verdict was returned in favor of the plaintiff in the sum of $25,000. Judgment was entered on the verdict and Chrysler appealed.

One of the assignments of error made by counsel for Chrysler is that the trial judge erred in instructing the jury that the negligent manufacture, assembly, fabrication, inspection or testing of the hood latch was in issue. The District Judge instructed the jury:

"I charge you, too, that if you find the defendant negligently *manufactured,* designed, or *assembled* the hood latch and the plaintiff's injuries resulted therefrom, the defendant is liable to the plaintiff even though a human agency may have contributed to the cause of the accident if the intervention of the human agency could reasonably be anticipated, that is, if that human agency was other than himself, other than the plaintiff in this case." (Emphasis added)

* * * * * *

"To put it in summary form, really, the sole issue in this case which you are required to decide in regard to the defendant and its alleged liability is whether or not the hood latch mechanism was defectively designed, *manufactured* and or *assembled* and whether or not such defective condition, if any, as claimed by the plaintiff, was a proximate cause of the injuries complained of." (Emphasis added.)

■ These instructions and other references to negligence in manufacture, assembly, fabrication or testing are erroneous. There is no evidence that there was any defect in manufacture or negligence of Chrysler in respect to any of these processes. From all of the evidence in the case it must be inferred that the hood latch was properly manufactured and was fit for the use and purpose for which it was intended. It worked perfectly in the manner for which it was designed. The sole issue, as developed by counsel for the plaintiff in his opening statement at the trial and in his argument to the jury and through the testimony of his expert witness, was negligence on the part of Chrysler in the design of the hood latch.

Another assignment of error relates to the sufficiency of evidence on the question of negligence of Chrysler in the design of the hood latch. Should the trial judge have directed a verdict for Chrysler for want of evidence of negligence in design?

The hood latch which is the subject of this action is known in the automotive industry as a "dove tail type latch." Its purpose is to secure the hood in position so that when it is closed it cannot be opened without manually tripping a device on the latch. It is designed so that when the hood is slammed down in closed position a tongue or tooth fits into a hole made and designed for that purpose. When the hood is being closed it is possible to manually hold the device used for the release of the latch so that the tongue or tooth of the latch will go outside of the hole for which it is designed. When this happens the hood is not securely fastened and it may "fly" up as a result of various causes such as wind or travelling over rough and bumpy roads.

The plaintiff testified that as he approached U. S. Route 6 while travelling on U. S. Route 20, there was a little bend to the left in his road. He looked in his rear view mirror to see if his back truck was wiggling and if he could see La-Vaughn Spencer, his companion driver. He said,

"There was a yellow flash, the hood flew up and I didn't have time to get away from it. It just happened so quick, almost like a streak of lightning."

This is all he knows about the happening of the accident and he has no recollection

of any of the events at the scene of the accident.

LaVaughn Spencer was also driving a three way strip for Commercial Carriers and was following the plaintiff at the time and place of the accident. He was between 500 and 1,000 feet behind the plaintiff and they were travelling at about forty miles per hour. Spencer described the accident as follows:

"His truck—it just seemed like it started to drifting off to the right of the road and I couldn't imagine what was wrong because he got way off on to the berm and when he got over there then he was in a position I could see and the hood was laying back."

The hood was back over the steering wheel and the plaintiff was still on his seat.

"His truck started up the incline of Route 6 which comes around and merges with 20 and then it swung back around like that (indicating) and over into the fence and when the truck started to go over, that is when he left the seat."

When the truck driven by the plaintiff came to rest it was lying upside down with the wheels in the air.

The plaintiff stopped at Erie, Michigan for a gas and oil check. He did not see the filling station attendant open the hood and he did not know whether or not it was opened. He stopped again at Four Mile Truck Stop near Fremont, Ohio, with Spencer and Chastine, another companion driver. They ate dinner there. This was about a mile from the scene of the accident.

The plaintiff testified that he checked the hood at both of these stops. In checking the hood he pushed up on it instead of down. He said, "If the hood isn't fastened it is going to rattle. Something is going to happen that will tell you it is not fastened." He further testified that when the hood comes loose you can see it vibrate, that it is some-thing you can observe. He did not notice any flutter on the truck in this instance.

This testimony of the plaintiff would indicate that the hood was securely fastened; otherwise he would have observed it. This is inconsistent with the theory upon which this case was tried. The theory of the plaintiff is that the tongue or tooth of the latch did not go into the hole which was designed for it. As evidence of this an examination of the truck after the accident showed scratch marks outside of the hole. Mr. Taylor gave it as his opinion that this is what caused the hood to become disengaged. Professor Howell gave this as his theory of the accident. It was upon this theory that he based his judgment that the design was inadequate.

We will now consider the duty of Chrysler in relation to the design of its product in question and determine whether there was sufficient evidence to submit to the jury on the issue of negligence in design. We proceed on the assumption that Chrysler owed a duty to the plaintiff since no question is raised on that issue.

■ It is conceded that the law of Ohio is applicable to the facts of this case since the accident happened in Ohio. We do not find any cases in Ohio which specifically define the duties of a manufacturer relative to product-design. The general rule may be stated as follows: It is the duty of a manufacturer to use reasonable care under the circumstances to so design his product as to make it not accident or foolproof, but safe for the use for which it is intended. This duty includes a duty to design the product so that it will fairly meet any emergency of use which can reasonably be anticipated. The manufacturer is not an insurer that his product is, from a design viewpoint, incapable of producing injury. 76 A.L.R.2d Section 1(b).

In Restatement of the Law, Second, Torts 2d Volume 2, Section 398, the rule is given as follows:

"A manufacturer of a chattel made under a plan or design which makes

it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design."

Professor Howell testified that in his opinion Chrysler could have reasonably anticipated that the tongue or tooth of the latch would be manually held outside of the hole which was designed for it and thus would give rise to an accident because the hood was not securely fastened. It was also his opinion that proper design would require the production of a latch, the function of which could not be distorted manually in closing the hood. In other words it would have to operate in such manner that in closing, the human hand could not depress the safety latch-tongue. The professor did not testify as to how such a design could be accomplished.

Professor Howell also testified that this latch would operate properly one thousand times out of a thousand closings of the hood, if the release was not manually held out of place. Chrysler had used this hood latch successfully for over twenty-five years. Other motor truck manufacturers had also used it for many years. One witness, Sidney H. Hurst, testified that he had had one experience with a similar truck. His hood flew up as he crossed a railroad track at Bellefontaine, Ohio, traveling about five to ten miles an hour. The evidence does not indicate what caused the hood to become disengaged in this instance. Another witness, Thomas L. Barton, had two experiences. One of these was at Springfield, Ohio. The hood of a truck mounted on the drive truck flew up. No cause is assigned for this occurrence. The other experience was also on a mounted truck. The hood was damaged and had to be wired down. The witness said:

"The best as I could see in my knowledge it had come on the outside because it was scratched on the outside like this hood here. The thing that comes down hadn't gone in the hole, but it came on the outside."

Barton further testified that after the plaintiff's accident,

"I never drove another truck without trying to tie the hood down, I mean another strip truck without tying the hood down and most of my drive trucks I tied my hood down, but I never got on the strip without tying the hood."

The issue here, as we view it, is a very narrow one: Whether the trial judge should have directed a verdict for Chrysler, for the reason that, as a matter of law, it was not negligent in designing the type of safety latch that is the subject of this action.

■ We are not concerned here with a dangerous instrumentality as is involved in so many cases. In Ohio an automobile or motor truck is not regarded as a dangerous instrumentality per se. Higbee Co. v. Jackson, 101 Ohio St. 75, 90, 128 N.E. 61, 14 A.L.R. 131; Williamson v. Eclipse Motor Lines, 145 Ohio St. 467, 62 N.E.2d 339, 168 A.L.R. 1356; Hanratty v. Godfrey, 44 Ohio App. 360, 184 N.E. 842; Watt v. McVoy, 30 Ohio Law R. 172; Rawson v. Olds Motor Works, 20 Ohio Cir.Ct., N.S., 182, affirmed 90 Ohio St. 469, 108 N.E. 1130. Bearing in mind that the manufacturer is not an insurer and that he is not bound to design a product that is either accident proof or fool proof we conclude, as a matter of law, that Chrysler was not negligent.

There was no defect in the latch as produced and there was no negligence in its manufacture. It was manufactured strictly in accordance with the design. It functioned perfectly for the purpose for which it was intended. It was only when it was misused that it did not function properly.

We find no Ohio cases that are closely analogous to the case at bar. The rule relating to negligence in design is well

stated in Marker v. Universal Oil Products Co., 250 F.2d 603, 605, C.A. 10,

"But it must be noted that no structural or constructural defect is claimed to exist in the instant case. (Citation omitted) Indeed, Universal did not build or service the unit nor was there a functional failure in its operation which could be attributed to Universal as its designer. Abstracted, appellant's claim is that the design could have included a safety feature in the form of side manways. Although the only evidence upon this contention produced by appellant indicates the suggestion of improvement in design to be not feasible, at least economically, *the rule is well settled that neither designer nor manufacturer has a legal duty to adopt or produce a process or product incorporating only features representing the ultimate in safety.*" (Emphasis added.)

The court sustained a directed verdict for the defendant.

Our view of the applicable rule is well-expressed in Day v. Barber-Colman Co., 10 Ill.App.2d 494, 508, 135 N.E.2d 231, 238, where the court said:

"And there was no obligation resting on the defendant manufacturer to adopt every possible new device which might possibly have been conceived or invented, if there were any; it is not of itself negligence to use a particular design or method in the manufacture or handling of a product or doing a job which is reasonably safe and in customary use in the industry, although other possible designs, whether in use in the industry or not, might be conceived which would be safer, and evidence as to what is thought by some to be a safer design or method or product is not admissible."

In this case the court sustained a judgment for the defendant notwithstanding a verdict of the jury in favor of the plaintiff. Although negligence in design was an issue in the case, it should be stated that the court decided the case on the issues of want of privity between the plaintiff and the defendant and contributory negligence of the plaintiff.

The cases cited on behalf of appellee, involving Ohio law, are not in point. Moran v. Pittsburgh-Des Moines Steel Company, 183 F.2d 467, C.A. 3, is distinguishable on the facts. The question in this case was whether the defendants were negligent in designing, supplying and recommending a tank of cylindrical design. The defendants contracted with East Ohio Gas Company to construct a tank for it. Previous experience had been with spherical tanks. The defendants held themselves out to be particularly skilled in the construction of such tanks. They recommended the cylindrical tank to be as satisfactory as the spherical and East Ohio Gas relied on their recommendation. Under these facts a jury question was presented.

Northwest Airlines v. Glenn L. Martin Company, 224 F.2d 120, 50 A.L.R.2d 882, C.A. 6, cert. den. 350 U.S. 937, 76 S.Ct. 308, 100 L.Ed. 818, rehearing den. 350 U.S. 976, 76 S.Ct. 431, 100 L.Ed. 846, involved alleged negligence in design and *manufacture* and not solely in design. In Steele v. Westinghouse Electric Corp., 107 Ohio App. 379, 159 N.E.2d 469, there was faulty and hazardous construction of an appliance using electricity, a highly dangerous element. Lonzrick v. Republic Steel Corp., 1 Ohio App.2d 374, 205 N.E. 2d 92, involved a defective chattel. The gist of the case is that privity is not necessary in an action against the producer.

The judgment of the District Court is vacated and the case remanded with instructions to dismiss the complaint.