**Donald L. WARNER, by his next friend, James A. Warner, Jr., and James A. Warner, Jr., Plaintiffs-Appellees,**

v.

**KEWANEE MACHINERY & CONVEYOR COMPANY, a foreign corporation, Defendant-Appellant.**

**No. 18667.**

United States Court of Appeals
Sixth Circuit.
June 16, 1969.

**1062**

Donald E. Miller, Detroit, Mich., Alexander, Buchanan & Conklin, Detroit, Mich., on brief, for defendant-appellant.

William H. Goodman, Detroit, Mich., Goodman, Eden, Robb, Millender, Goodman & Bedrosian, Paul A. Rosen, Detroit, Mich., on brief, for plaintiffs-appellees.

Before O'SULLIVAN, PECK and COMBS, Circuit Judges.

PECK, Circuit Judge.

This action, which resulted in a jury verdict and judgment for the plaintiff in the District Court, grew out of an accident in which the plaintiff, then 12 years of age, was injured. The suit was brought on his behalf by his father as his next friend, and on behalf of the father individually. Herein, however, the boy will usually be referred to as the "plaintiff," and the defendant-appellant as the "defendant."

At the time of the accident straw was being loaded into a haymow with the aid of a device manufactured and marketed by the defendant and known as a Kewanee Portable Elevator. In the use of such a device, bales of straw are placed on the bottom, or loading end, of the elevator and paddles standing vertically from the axis of the elevator push the bales up and into the haymow (or other receiving area). The paddles are connected to chains resting on the floor of the elevator and were in this instance motivated by a power take-off from a tractor.

Shortly prior to the accident some difficulty developed because of the position of the bales at the lower or loading end of the elevator, and the tractor was turned off to permit adjustment. Several boys were engaged in the operation, and while the elevator was stopped one of the older boys who had been in the haymow sought to change places with plaintiff and another boy who had been on the ground. As the record indicates was frequently if not customarily done, this was accomplished by using the elevator as a ladder or stairway, with the paddles serving as steps. The injuries complained of were suffered when the device was reactivated before plaintiff had stepped into the haymow and when his foot became caught underneath a paddle. He was dragged to the top of the elevator, and his leg was pulled around and underneath the elevator itself resulting in his injury. As a result of the accident plaintiff lost his left leg from a point below the knee.

Appellate review of this case presents unusual complications by reason of the fact that, on the one hand, while defendant made a motion for a directed verdict at the close of plaintiff's case it neither renewed that motion nor subsequently moved for judgment notwithstanding the verdict,[1] and, on the other hand, by the fact that plaintiff not only attempted to bolster a weak case during the presentation of defendant's case, but actually developed points upon which he now pri-

---

[1]. We recognize but do not here pass upon the question of defendant's right to file the latter motion in the circumstances. *See* Starling v. Gulf Life Ins. Co., 382 F.2d 701 (5th Cir. 1967); Massaro v. United States Lines Co., 307 F.2d 299 (3rd Cir. 1962).

marily relies during cross-examination of defendant's witnesses.

In considering the significance of defendant's failure to renew its motion for a directed verdict or to later make a motion for judgment NOV, it must be kept in mind that defendant-appellant raises questions involving the legal sufficiency of the evidence. As Professor Moore points out, however, that question "is open only when the motion for directed verdict is renewed at the close of the trial." 5 J. MOORE, FEDERAL PRACTICE ¶ 50.05(1), at 2322; *Gebhardt v. Wilson Freight Forwarding Co.*, 348 F.2d 129 (3d Cir. 1965); *American Nat'l Bank & Trust Co. v. Dean*, 249 F.2d 82 (6th Cir. 1957); *Minnehaha County v. Kelley*, 150 F.2d 356 (8th Cir. 1945). Professor Moore goes on to state (*supra*):

> "For purposes of appeal, a motion for a directed verdict is necessary to raise the legal question as to whether the case should have been submitted to the jury. Whether the verdict is authorized by the evidence is a question which should be raised at the trial. If the sufficiency of the evidence goes unchallenged, no error on appeal can be attributed to the trial judge for submitting the case to the jury, for federal appellate courts do not directly review jury verdicts, but only rulings of the judge which may have affected the verdict. In this respect, it may be said that the necessity of a motion for a directed verdict, to raise the legal question as to the sufficiency of the evidence, is emphasized under the new Rules." (Citing *Baten v. Kirby Lumber Corp.*, 103 F.2d 272 (5th Cir. (1939)).

■■ In accordance with this rule of law we again hold that since the defendant did not renew its motion for a directed verdict at the close of the entire testimony, "the claimed insufficiency of the evidence is not before us." *American Nat'l Bank & Trust Co., v. Dean*, 249 F. 2d at 83. However, the statement of this conclusion of law leaves open the more difficult question as to what it encompasses. Read literally the rule would seem to preclude even a consideration as to whether any evidence had been received on an essential element of the plaintiff's case, but we interpret the rule to provide as a test the question of whether plaintiff's evidence considered in the light most favorable to him established a prima facie case, or one properly submissible to a jury.

■ We parenthetically observe that even viewed in such most favorable light to him plaintiff's evidence in his case in chief was insufficient to create a jury issue. However, since the defendant chose to proceed rather than to rest at that point, the question becomes whether so viewed there is evidence in the entire record to create a jury question. *Dindo v. Grand Union Co.*, 331 F.2d 138, 141 (2d Cir. 1964). In so framing the issue, the word "evidence" must be construed as meaning evidence properly received, and that construction places on us the obligation of considering the Court's rulings on objections to evidence offered by the plaintiff. *See Pruett v. Marshall*, 283 F.2d 436 (5th Cir. 1960); *United States v. Mountain State Fabricating Co.*, 282 F.2d 263 (4th Cir. 1960); 5 J. MOORE, FEDERAL PRACTICE ¶ 50.05 (1), at 2323; BARRON & HOLTZOFF, FEDERAL PRACTICE & PROCEDURE § 1081, at 430.

Before passing to a consideration of the trial court's rulings on objections to specific areas of proffered evidence, we point out that plaintiff instituted and prosecuted this action on two theories, namely those of negligence in failing to warn and negligence of design (or breach of warranty). The claim under the first is that the defendant failed to afford proper warning to persons using its elevators, and the second contends that the machine could and should have been differently designed. As to the warning, plaintiff argues that a warning should have been provided advising of the dangers of climbing upon these elevators or using them as ladders, especially since defendant should have known of such dangers. As to the design, plaintiff argues that the elevator should have been

controlled by a start-stop device so located that the operator would have a full view of the machine, "as opposed to forcing the operator to engage or disengage the elevator [at a position from which] his view of the machinery was obstructed."

In accordance with the first of these contentions the jury was charged first that "plaintiffs claim and contend that the defendant Kewanee was negligent in failing to warn users of the machine of the hazards involved in climbing the machine when the defendant knew that it was customary for farmers and children to climb the machine and when it also knew that it was extremely dangerous for the machine to be used in such a way and finally when it knew that farmers and children were not aware of this danger." The issues concerning the alleged failure to warn center about three exhibits (plaintiff's Exhibits Nos. 14, 17 and 18) which were received in evidence.

These exhibits were received during plaintiff's cross-examination of two of defendant's witnesses and the vice of permitting a party to offer affirmative evidence during the presentation of his opponent's case becomes apparent. Had these exhibits, upon which heavy emphasis was placed by the plaintiff (and indeed by the trial court in its charge to the jury) been produced and offered as a part of plaintiff's case, proper identification, materiality and relevance could have been explored in a normal manner. In that circumstance the problems now primarily debated by the parties with reference to these exhibits would not exist.

■ The first of these exhibits is plaintiff's Exhibit 14, which is a booklet entitled "The Portable Farm Elevator," promulgated by the Agricultural Extension Service of Ohio State University. It was written by W. E. Stuckey, B. J. Lamp and K. A. Harkness. The authors are identified in the booklet as a safety specialist, an associate professor of agricultural engineering and an instructor in agricultural engineering of Ohio State University respectively, and

Mr. Lamp and Mr. Harkness are further identified as being on the staff of the Ohio Agricultural Experiment Station. On the last page of the booklet there appear fifteen statements which may be fairly characterized as safety tips or suggestions, although they are not so identified. The thirteenth of these statements reads, "Don't use an elevator as a ladder or scaffold," and the fourteenth reads, "Never let children climb on an elevator." Through cross-examination of defendant's Chief Design Engineer (during the pertinent period) plaintiff established that he had seen the booklet; although the testimony on this subject is unsatisfactory, its most favorable construction for the plaintiff indicates that the witness had seen the booklet some ten years prior to the 1967 trial. The date of manufacture of the machine in question was shown to have been sometime between 1952 and 1959 and the trial judge admitted the exhibit as bearing on the question of defendant's "awareness" of its contents. Had the exhibit been identified by and offered during the testimony of a witness called by plaintiff, defendant would have been afforded an opportunity to cross-examine concerning the authenticity and particularly the date of publication of the booklet. Not only was defendant denied this opportunity, but obviously the witness undergoing cross-examination by plaintiff lacked the ability to provide information in these areas. In other words, not only was proper evidence on these crucial points not offered, it was not even available from the witness through whom the exhibit was offered. We conclude that the objection to receipt of Exhibit 14 should have been sustained.

■ Plaintiff's Exhibits 17 and 18 stand on even more precarious grounds so far as providing an affirmative portion of plaintiff's case is concerned. Exhibit 17 is an operator's manual distributed by the Viking Manufacturing Company in connection with an elevator produced by it, and Exhibit 18 is a similar manual published by the Allis-Chalmers Manufacturing Company in connection

with a device manufactured by it and referred to as a "bail conveyor," but similar to the elevator involved here. Both of these exhibits contain general warnings to the users of these machines and each contains this statement: "Keep off implement unless seat or platform is provided. Keep others off." In the present context, the difficulty with these exhibits is that they were offered and received for the limited purpose of impeaching the testimony of one of defendant's witnesses during his cross-examination. However, this limited purpose seems to have been subsequently disregarded, as is apparent from the consideration afforded them by the Court in its instructions to the jury, and in this Court heavy reliance is placed on these exhibits as establishing the standard of care to which the defendant should be held. As in the case of Exhibit 14 defendant was denied an opportunity to explore the authenticity and materiality of the exhibits because they were identified (however inadequately) only by one of its own witnesses during cross-examination by the plaintiff, and received in evidence during defendant's case. Were we required to do so, we would have little hesitation in holding that these exhibits were improperly received.[2] However, in connection with Exhibits 17 and 18 we need not make this determination since it is here concluded that the receipt of the exhibits for impeachment purposes only without an instruction to the jury to that effect constituted prejudicial error.

■ Reiterating our statement of the fact that defendant's failure to move for a directed verdict at the conclusion of all the evidence makes it necessary to view the record in its most favorable light to the plaintiff to determine whether it establishes a jury question, we now consider the record as it would stand without the three exhibits we hold to have been improperly received. We conclude that without the support of these exhibits plaintiff's case, to the extent it is bottomed on the failure to warn grounds, collapses and we hold that plaintiff has not offered other proof to establish a jury question on this issue.

■ Turning to plaintiff's second contention we consider his argument that the elevator was negligently designed since the start-stop device controlling it was not located in such a position that the operator had a full view of the whole machine. Plaintiff's entire case on this point must rise or fall on the testimony of one expert called by him. Were we permitted to consider the sufficiency of the evidence adduced through this witness to create a jury question we would unhesitatingly hold that it did not, but again we are restricted in our consideration by the fact that defendant failed to renew its motion for a directed verdict at the close of all the evidence. This restriction does not, however, preclude an examination of whether plaintiff's evidence on the alleged negligent design (or breach of implied warranty) grounds presents a jury question as a matter of law.

■ In *Gossett v. Chrysler Corporation*, 359 F.2d 84 (1966) this Court was presented with an appeal from a judgment in favor of a plaintiff who allegedly suffered injury because of Chrysler's negligence in designing a part. The complaint in that case stated that the "negligence consisted of improperly designing [a] hood latch, improperly manufacturing and assembling said hood latch and in failing to properly test and inspect said hood latch * * *." (*Gossett, supra*, at 85–86.) This Court speaking through Judge Cecil, defined the issue to

---

2. An additional valid ground for excluding these exhibits, and Exhibit 14 as well, exists by reason of the fact that on re-cross-examination the owner of the elevator testified that he did not receive any kind of a brochure or operating manual or any literature at the time of its purchase, and that he would not have read such literature had he received it. His son testified that they had "the book that come with [the elevator]" at home, but that he had never looked at it. *See* Vroman v. Sears, Roebuck & Co., 387 F.2d 732 (6th Cir. 1967).

be "[w]hether the trial judge should have directed a verdict for Chrysler, for the reason that, as a matter of law, it was not negligent in designing the type of safety latch that is the subject of this action." (*Gossett, supra,* at 88.) The identical issue presented in the present appeal is whether defendant was negligent as a matter of law in designing the type portable elevator that is the subject of this action. In resolving the issue presented in *Gossett* Judge Cecil stated (p. 88): "Bearing in mind that the manufacturer is not an insurer and that he is not bound to design a product that is either accident proof or fool proof we conclude, as a matter of law, that Chrysler was not negligent." Judge Cecil went on to point out that there was no defect in the latch as produced and that there was no negligence alleged in connection with its manufacture, which was strictly in accordance with its design. Exactly those statements may be made with reference to the portable farm elevator. The Court in *Gossett* then proceeded to offer with approval the following quotation from *Day v. Barber-Colman Co.,* 10 Ill. App.2d 494, 508, 135 N.E.2d 231, 238 (1956) as presenting "[o]ur view of the applicable rule":

> "And there was no obligation resting on the defendant manufacturer to adopt every possible new device which might possibly have been conceived or invented, if there were any; it is not of itself negligence to use a particular design or method in the manufacture or handling of a product or doing a job which is reasonably safe and in customary use in the industry, although other possible designs, whether in use in the industry or not, might be conceived which would be safer, and evidence as to what is thought by some to be a safer design or method or product is not admissible."

Again, this language has precise application to the present situation. Timely objection was made to the evidence offered through plaintiff's expert as to what he thought might be a "safer design" for a portable elevator, and we conclude the objection to have been well taken.

 *Day v. Barber-Colman Co., supra,* was also cited with approval in *Marker v. Universal Oil Products Co.,* 250 F.2d 603 (10th Cir. 1957). It was there held that as a matter of law no jury question was presented where the injured party claimed that the design of the device involved could have included a safety feature which it did not incorporate, the Court observing that "the rule is well settled that neither designer nor manufacturer has a legal duty to adopt or produce a process or product incorporating only features representing the ultimate in safety." (*Marker, supra,* at 605.) As we have indicated, the trial court erred in not sustaining the objection to the portion of the testimony of plaintiff's expert setting forth his opinion as to what he thought would have been a safer design for a portable farm elevator than that adopted by the defendant. Bereft of that evidence, it is clear that the record does not establish a case on the negligent design (or implied warranty) issue, and we so hold. However, in our view it makes little difference whether or not that portion of the expert's testimony remains in the record,[3] because for the reasons set out in *Gossett* and *Marker, supra,* we hold that there was no duty on the defendant to adopt a design representing the ultimate in safety, and we further hold that with or without the expert's opinion testimony plaintiff's evidence construed most favorably to him does not establish a case of negligence on the part of the defendant.

We have no alternative but to direct that the judgment entered in the District Court be vacated, and that a new trial not inconsistent with the foregoing be ordered.

3. The evidence in the present case falls far short of establishing an industry pattern reaching the level of a trade standard.